**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin Chew, | No. CV-25-00818-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Homesite Insurance Company, *et al.*, | |
| Defendants. | |

At issue is Plaintiff's Renewed Motion to Compel Appraisal (Doc. 8, Mot.). Defendant has filed a Response (Doc. 13, Resp.) and Plaintiff has filed a Reply (Doc. 14, Reply). Also at issue is Defendant's Motion for Leave to File a Sur-Reply, (Doc. 15), to which Plaintiff has filed a Response (Doc. 17) and Defendant has filed a Reply (Doc. 18).

**I.    BACKGROUND**

Plaintiff Benjamin Chew's residence in Chandler, Arizona was insured by Defendant Homesite Insurance Company when it was damaged by a windstorm on or about September 12, 2023. (Doc. 1-2, Compl. at 2–3.) Plaintiff alleges to have made a timely insurance claim for damages on the same day. (Compl. at 3.) Defendant contends the damage was not reported until May 2024 when Plaintiff began the process of adding solar panels to the roof and the prospective solar company noticed the damage. (Resp. at 3.)

In response to Plaintiff's insurance claim, Defendant sent a forensic engineer to examine the roof, who submitted a report on May 24, 2024, containing his findings. (Resp. at 3 Doc. 13-1, Report.) The forensic engineer identified approximately 70 roof tiles

damaged by the storm in addition to other tiles that were damaged from alternate sources. (Report at 13–14.) The Report detailed how the direction of the damage to these tiles was not consistent with the direction of the storm and that evidence of historical repair attempts indicated there have been ongoing issues with the roof, including wear-and-tear, inadvertent man-made damage, and insufficient fastening/mortar bond. (*Id.*) As a result, the Report identified multiple causes of damage to the roof, only some of which would be covered by Plaintiff's insurance policy. Defendant valued Plaintiff's loss at $4,888.45 and compensated him in accordance with his policy. (Mot. Ex. A.) Defendant then closed the insurance claim. (Resp. at 3.)

Later in 2024, Plaintiff retained United Contracting Group (UCG) to inspect the roof, and it determined that a full roof replacement was necessary at a cost of $214,449.90. (*See* Mot. Ex. B.) On January 2, 2025, Plaintiff contacted Defendant to discuss UCG's estimate. (Resp. at 4.) Defendant replied by providing Plaintiff with the forensic engineer's Report and rejecting Plaintiff's estimate, explaining that the policy did not allow reappraisal over a coverage issue. (*Id.*)

Plaintiff responded by filing a Complaint in Arizona Superior Court, raising claims of breach of contract and bad faith. (Compl.) After Defendant's removal of this case, Plaintiff filed the present Renewed Motion to Compel Appraisal.

Plaintiff's policy describes the appraisal process as follows:

> Appraisal. If you and we fail to agree on the amount of the loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

(Reply Ex. 1, Policy § F.)

## II. LEGAL STANDARD

Arizona law treats appraisal requests pursuant to a contractual provision the same as arbitration requests. *Meineke v. Twin City Fire Ins. Co.*, 892 P.2d 1365, 1369 (Ariz. Ct. App. 1994); *Hanson v. Commercial Union Ins. Co.*, 723 P.2d 101, 103 (Ariz. Ct. App. 1986). Thus, as with arbitration clauses under the Federal Arbitration Act, appraisal clauses are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Ori v. Am. Family Mut. Ins. Co.*, No. CV-2005-697-PHX-ROS, 2005 WL 3079044, at *2 (D. Ariz. Nov. 15, 2005). A court is "very limited in its power to refuse a motion to compel [appraisal]." *Id*. Appraisers determine the amount of damage but do not resolve issues regarding coverage. *Hanson*, 723 P.2d at 104.

## III. ANALYSIS

### A. Defendant's Motion Requesting Leave to File Sur-Reply

When considering whether to grant leave to file a sur-reply, relevant factors include whether the movant's reply raises arguments or issues for the first time, whether the sur-reply would help resolve the pending motion, and whether the movant would be unduly prejudiced were leave granted. *See Sebert v. Arizona Dep't of Corrs.*, No. CV-16-00354-PHX-ROS (ESW), 2016 WL 3456909, at *1 (D. Ariz. June 17, 2016).

Because Plaintiff made most of its arguments for the first time in its Reply, all three factors favor Defendant's filing of a sur-reply. The Court will therefore grant Defendant's motion and the Court has considered the sur-reply in resolving the instant Motion to Compel Appraisal.

### B. Plaintiff's Motion to Compel Appraisal

The question the parties present is whether the disparity in estimates to repair the roof is an issue of valuation or coverage. The parties agree that a windstorm occurred on or about September 12, 2023 and resulted in damage to Plaintiff's roof — an event covered by Plaintiff's insurance policy. Plaintiff has already received $4,888.45, minus the deductible. However, Plaintiff disputes the amount, citing the UCG estimate stating that $214,449.90 is necessary to replace the roof.

Plaintiff contends the disparity constitutes a disagreement over the amount of loss caused by the covered event and appraisal is the appropriate remedy pursuant to the policy to resolve the issue of the amount of damage caused by the windstorm. (Reply at 4.) Defendant asserts that the disparity is the result of disagreement over whether the damage was caused by the windstorm or a combination of wear-and-tear, man-made damage, and insufficient fastening/mortar bond. (Resp. at 2.) Defendant classifies this as a coverage issue and, pursuant to *Hanson*, argues it is an issue to be resolved by the finder of fact instead of an appraiser.

In *Carbonneau v. American Family Mutual Insurance Co.*, No. 06-1853-PHX-DGC, 2006 WL 3257724 (D. Ariz. Nov. 9, 2006), the court had to resolve a similar issue. There, the plaintiffs' roof was damaged by a storm, a covered event. *Id.* at *1. The plaintiffs disagreed with their insurer's valuation of the loss and filed a motion to compel appraisal. *Id.* The disagreement focused on whether an entire roof replacement was necessary to repair damage caused by the storm or if the damage could be repaired by replacing individual tiles. *Id.* The court granted the motion, reasoning that because the parties agreed to the scope of coverage, the issue of whether the entire roof needed to be replaced was an issue of valuation of loss and not coverage. *Id.* Had there been a dispute over whether the plaintiffs' estimate included damage caused by wear-and-tear, the appraisal would have been denied:

> If the added costs [of general demolition costs, replacement of the entire roof, overhead costs, profit, and sales tax] relate to the replacement of roof tiles damaged through ordinary wear and tear, then appraisal should be denied because it would be clear that Plaintiffs' adjuster was considering items outside the scope of the appraisal agreement.

*Id.*

In *San Souci Apartments v. National Surety Corp.*, No. CV-12-2389-PHX-GMS, 2013 WL 428091 (D. Ariz. Feb. 4, 2013), the court resolved a similar issue by denying appraisal. There, the plaintiff's roof was damaged by a hailstorm and the plaintiff disagreed with its insurer's offer under their policy. *Id.* at *1. The court found that the dispute was an

- 4 -

issue regarding coverage, not valuation, because the insurer claimed the damage was caused by another source not covered by the policy. *Id.* at *2. The court distinguished the case from *Carbonneau*, where the question was whether replacing the entire roof was necessary to repair damage caused by a covered event. *Id.* ("[T]he issue here is whether a significant portion of Plaintiff's claim is covered under the policy.")

UCG's report is silent on whether the scope of the estimate was limited to repairing damage caused by the windstorm or if it included repairing damage caused by other sources. Conversely, the forensic engineer's report provided by Defendant raises the issue that the roof was damaged by non-covered events, including wear-and-tear and man-made damage. Thus, the facts of the instant case are more like *San Souci Apartments* and distinguishable from *Carbonneau* because the issue is whether a significant portion of Plaintiff's requested repair amount is covered under the policy and whether UCG's report includes repairs outside of the scope of the policy. Whether the damage is covered by the policy is not appropriately resolved by the appraisal process.

However, in light of Arizona's preference to resolve issues through the contractually agreed appraisal process, Plaintiff is entitled to an appraisal to determine the valuation of the loss on the agreed upon coverage. Defendant suggests limiting the appraisal to the 70 tiles it agrees were damaged by the storm or separating the appraisal award between an appraisal of losses for which coverage is agreed and of claimed losses for which coverage is disputed.

In *6700 Arrowhead Owners Association v. State Farm Fire and Casualty Co.*, No. CV-12-1677-PHX-DGC, 2012 WL 5868969 (D. Ariz. Nov. 19, 2012), the court resolved a case where the parties agreed that there was damage caused by a covered event but disagreed as to whether additional damage was covered by the policy. The court granted the appraisal but required that "the appraiser's opinion shall be itemized to preserve Defendant's ability to assert the coverage issues already raised by Defendant in the parties' communications." *Id.* at 3. This is an appropriate remedy in the instant case as it permits

- 5 -

Plaintiff to address the valuation issue through the appraisal process while preserving Defendant's right to contest the coverage issue already raised.

**IT IS THEREFORE ORDERED** granting in part Plaintiff's Motion to Compel Appraisal (Doc. 8). The appraisal shall value all of Plaintiff's alleged damages, but the appraisers' opinion shall be itemized to preserve Defendant's ability to assert the coverage issues already raised by Defendant in the parties' communications.

**IT IS FURTHER ORDERED** granting Defendant's Motion to File Sur-Reply (Doc. 15). The Clerk of Court is directed to file the document currently lodged at Doc. 16.

**IT IS FURTHER ORDERED** staying these proceedings pending the results of the appraisal. The parties shall jointly file a status report within 14 days of the completion of the appraisal process or by **October 1, 2025**, whichever comes first.

Dated this 15th day of July, 2025.

Honorable John J. Tuchi
United States District Judge